# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Kellen Brown, *Administrator of the Estate of Tiffany Brown*, | ) ) ) |
| Plaintiff, | ) Civil Action No.: 3:19-cv-00595-JMC ) ) ) |
| v. | ) **ORDER AND OPINION** ) ) |
| Leon Lott, *in his capacity as Sheriff of the Richland County Sheriff's Department*, and Joe Phillip Smith, *in his individual capacity*, | ) ) ) ) ) |
| Defendants. | ) ) |

Plaintiff Tiffany Brown brought the instant suit alleging violations of her constitutional rights and state law after she claims she was unlawfully arrested.[1] (*See* ECF No. 1-1.) This matter is before the court on the above-captioned Defendants' Motion for Summary Judgment. (ECF No. 42.) In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to the United States Magistrate Judge for pretrial handling. In February 2021, the Magistrate Judge issued the Report and Recommendation ("Report") in which she recommended the court grant the Motion and dismiss all claims. (ECF No. 53 at 34.) Plaintiff filed Objections to the Report (ECF No. 56), to which Defendants briefly replied (ECF No. 61).

For the reasons set forth below, the court **GRANTS** Defendants' Motion for Summary Judgment on all claims. (ECF No. 42.) The court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 53) and incorporates it herein by reference as set forth below.

---

[1] The court uses "Plaintiff" interchangeably to refer to either Tiffany Brown or Kellen Brown, the administrator of Tiffany Brown's Estate.

1

I.     RELEVANT BACKGROUND TO PENDING MOTION[2]

This case arises from a fight between the fiancé (Tiffany Brown—then Williams) and ex-wife (Charisse Brown) of the same man (Kellen Brown). (*Id.* at 2.) The ex-wife reported the fight to law enforcement and sought charges against the fiancé, who was arrested. (*Id.*) After a finding she acted in self-defense, the fiancé sued law enforcement but later died during the pendency of this action, and Kellen was substituted as Plaintiff based upon his status as administrator of her Estate, arguing law enforcement should not have believed his ex-wife. (*Id.* at 2, 10.)

The fight occurred at a funeral held at the home of Kellen's parents in late July 2016. (ECF Nos. 45-1 through 45-4; 45-7 at 5.) A verbal altercation began when Kellen's and Charisse's nine-year-old son started taking pictures with Tiffany. (*See id.*) The altercation purportedly escalated, and at some point—either before or while Tiffany and Charisse were leaving the residence with the intention to fight outside—one of the women initiated the physical altercation. (*See id.*) Shortly thereafter, Charisse filed a police report and orally recounted that, as she and Tiffany exited the residence, Tiffany pushed her from the back to the ground, causing her to fall on concrete and injure herself, with Tiffany then jumping on her and hitting her.[3] (*See* ECF No. 42-3 at 2.)

Thereafter, Joe Phillip Smith, then an investigator with the Sherriff's Department, conducted an investigation. (ECF No. 42-9 at 20:4-21:9.) Smith interviewed Kellen and Tiffany, who said Charisse started the fight, while Charisse pointed to Tiffany as the aggressor.[4] (*See* ECF Nos. 42-4; 42-7.) Smith was also informed of a tumultuous history among the parties, including

---

[2] The Report sets forth the relevant facts and legal standards, which this court adopts and incorporates herein without a full recitation.
[3] By contrast, several witnesses later testified that Charisse initiated physical contact with Tiffany inside the residence. (*See* ECF Nos. 45-1 through 45-4.)
[4] Initially, Charisse claimed Kellen was the suspect. (ECF No. 42-7 at 5.) After the altercation with Tiffany, Kellen admitted to threatening to assault Charisse if she hit him while still at the scene. (*Id.*)

an incident at Frankie's Fun Park where Charisse slapped Kellen, as well as other instances of texts and calls to Tiffany described as threatening or harassing. (ECF No. 42-7.) The minor child's account of the incident, however, mainly supported Charisse's version of events. (ECF No. 42-5.) After reviewing these statements and photos of Charisse's injuries, Smith determined probable cause existed that Tiffany assaulted Charisse by pushing her from behind to the ground, jumping onto her back, and hitting her. (ECF No. 42-2 at 1-2.) Smith then sought an arrest warrant. (*See* ECF No. 42-8.) The affidavit in support of the warrant read as follows:

> That on or about 7/22/2016 while at 2511 Grant Street in the Waverly Magisterial District of Richland County, the defendant did commit the crime of Assault and Battery 3rd Degree. It is believed the defendant did intentionally commit a battery upon the victim, Charisse Brown, by pushing the victim from behind causing the victim to fall out of the front door of the residence onto the concrete walkway. The defendant then jumped onto the victim's back and continued to hit the victim about the body. The victim knows the defendant by name and sight. Affiant and others are witness to prove the same.

(*Id.*)[5]

"Over a year later, Smith received four affidavits from funeral attendees and witnesses[,]" which he had not previously interviewed, all supporting Tiffany's version of the incident. (*See* ECF Nos. 45-1 through 45-4; 53 at 9.) Smith also obtained an email wherein Charisse purportedly admitted she slapped Kellen in front of their minor child at Frankie's Fun Park. (*See* ECF No. 45-9.) Subsequently, in a state evidentiary hearing in June 2018, the Court ruled Tiffany had acted in self-defense. (ECF No. 45-12.)

---

[5] There is no indication Smith orally informed the state magistrate judge of differing accounts of the incident in question beyond his testimony that it was his normal practice to do so. (ECF No. 53 at 7-9.) In fact, Plaintiff insists it was this particular state magistrate judge's practice to notate any oral exculpatory evidence on the warrant worksheet, and Plaintiff further claims no such notations exist on the worksheet here. (*See* ECF No. 45-7.)

Plaintiff later brought the instant suit alleging violations of her constitutional rights and state law, which was removed to federal court in February 2019. (ECF Nos. 1; 1-1.) Defendants filed the instant Motion for Summary Judgment in November 2020, and the Report was entered a little over two months later. (*See* ECF Nos. 42, 53.) The court held a hearing on this matter in May 2021, at which the parties appeared and presented arguments. (ECF No. 64.)

## II.     JURISDICTION

This court has jurisdiction over Plaintiff's federal law claims via 28 U.S.C. § 1331, as the claims arise under a law of the United States. Additionally, the court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), because these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." *Id.*

## III.    LEGAL STANDARD

A.     <u>Report and Recommendation</u>

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court reviews *de novo* only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to–including those portions to which only "general and conclusory" objections have been made–for clear error. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter

with instructions. *See* 28 U.S.C. § 636(b)(1).

    B.   <u>Motion for Summary Judgment</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

When considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under governable law will properly preclude the entry of summary judgment." *Id.* at 248. Further, to show that a genuine issue of material fact exists, the non-moving party must set forth facts beyond "[t]he mere existence of a scintilla of evidence." *Id.* at 252. The non-moving party must present evidence sufficient to demonstrate that a reasonable jury could return a verdict for the non-moving party in order to avoid summary judgment. *See id.* at 248.

### IV.   ANALYSIS

A.   <u>Report and Recommendation</u>

In February 2021, the Magistrate Judge issued the Report suggesting the court grant Defendants' Motion for Summary Judgment. (ECF No. 53.) In the Report, the Magistrate Judge began with Plaintiff's federal unlawful seizure claim and outlined the relevant law:

> To prove a seizure was unreasonable because it followed from a deficient warrant, a plaintiff is required to prove defendants deliberately or with a "reckless disregard

> for the truth" made material false statements in the affidavit, *Franks v. Delaware*, 438 U.S. 154, 171 (1978), "or omitted from that affidavit 'material facts with the intent to make, or with reckless disregard of whether [she] thereby made, the affidavit misleading.'" *Miller v. Prince George's County, MD*, 475 F.3d 621, 627 (4th Cir. 2007) (citing *United States v. Coakley*, 899 F.2d 297, 300 (4th Cir. 1990)). "[I]n order to violate the Constitution, the false statements or omissions must be 'material,' that is, 'necessary to the [neutral and disinterested magistrate's] finding of probable cause." *Id.* at 628 (citing *Franks*, 438 U.S. at 155-56).
>
> Additionally, under the qualified immunity defense, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity ensures that "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992). Whether an officer is entitled to qualified immunity is a question of law for the court and, when there are no relevant disputed material facts, a court should rule on the qualified immunity issue at the summary judgment stage. *Willingham v. Crooke*, 412 F.3d 553, 558 (4th Cir. 2005) ("Ordinarily, the question of qualified immunity should be decided at the summary judgment stage.").
>
> To resolve a qualified immunity defense, the court must (1) determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right, and (2) determine whether the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Courts may address the two prongs of the qualified immunity analysis in whichever order is appropriate in light of the circumstances of the particular case at hand. *Id.*

(ECF No. 53 at 11-13.)

From there, the Magistrate Judge determined Smith had probable cause to arrest Tiffany. (*Id.* at 14.) Specifically, the Magistrate Judge highlighted Charisse's and the minor's version of events, as well as the nature of Charisse's injuries, "notwithstanding Tiffany's denial that she was the aggressor and Kellen's agreement that Charisse was the aggressor, even though he did not witness the inception of the dispute." (*Id.*)

The Magistrate Judge then evaluated each of Plaintiff's protestations, concluding they held no merit. (*Id.* at 14-15.) First, the Magistrate Judge observed Tiffany did not offer inconsistent

statements on who committed the alleged assault. (*Id.*) Although Tiffany originally "identified Kellen as a 'second subject,' stating he threatened to cause her bodily harm, a threat Kellen later confirmed having made[,]" "[t]here is no indication from the record that Charisse ever stated . . . anyone but Tiffany assaulted her." (*Id.* at 15.) Second, the Magistrate Judge pointed out that Plaintiff offered no reason "for Smith not to believe" the minor's testimony. (*Id.*) The Magistrate Judge further noted the state court judge's comment that minors always sided with the custodial parent was not "legally dispositive of the issue at hand." (*Id.*) Third, the Magistrate Judge agreed Charisse's injuries alone did not establish probable cause, but asserted that "Smith did not solely rely on Charisse's injuries to make a probable cause determination." (*Id.* at 16.) Fourth, the Magistrate Judge commented that "the Fourth Amendment does not require every potential witness be interviewed and every lead be followed[,]" even though it "would have been more prudent" for Smith to have interviewed additional witnesses. (*Id.* at 16-17 (citations omitted).)

Fifth and finally, the Magistrate Judge explained Tiffany's and Kellen's disputed version of events were insufficient to extinguish probable cause. (*Id.* at 18.) In particular, the Magistrate Judge expounded that Tiffany's denial alone was insufficient "to find a lack of probable cause"; Kellen "did not witness the beginning of the physical altercation between the two women," thus undercutting his statement that Charisse started the fight; and the prior "acrimon[ious]" incidents among the parties likewise did "not undermine Smith's probable cause determination." (*Id.* at 18-19.)

Next, the Magistrate Judge examined Plaintiff's related claim that Smith recklessly omitted material facts from his affidavit in support of Tiffany's arrest warrant. (*Id.* at 19.) After beginning by noting the court only examines the evidence Smith possessed when he sought the warrant, the Magistrate Judge concluded that, even if the affidavit had included additional facts that Plaintiff

7

insists are material, such a "'corrected' warrant still would evidence the existence of probable cause."[6] (*Id.* at 19-20.) Nor, the Magistrate Judge decided, was there "evidence that Smith's representations to the [state] magistrate judge were designed to mislead or were contemplated in reckless disregard of whether the representations would mislead." (*Id.* at 21.) Accordingly, the Magistrate Judge suggested finding Smith was entitled to qualified immunity because he "did not violate Tiffany's Fourth Amendment rights[.]" (*Id.*)

Lastly, the Magistrate Judge turned to Plaintiff's remaining state law claims. (*Id.* at 21.) The Magistrate Judge observed such claims were "brought pursuant to the South Carolina Tort Claims ACT ('SCTCA')[.]" (*Id.*) The Magistrate Judge then found that, because probable cause existed to support the arrest, Plaintiff's claims for false imprisonment, intentional infliction of emotional distress, and assault and battery in essence could not survive. (*Id.* at 25-27, 30-31.) The gross negligence and recklessness claim required dismissal, the Magistrate Judge decided, because "the record does not indicate . . . Smith failed in his duty to act reasonably in his interactions. (*Id.* at 22-25.) The claims for defamation and malicious prosecution likewise failed, the Magistrate Judge continued, based primarily upon exceptions within the SCTCA and because Tiffany had since passed away. (*Id.* at 27-30.) Moreover, the Magistrate Judge stressed that one news article from 2012 claiming Smith previously resigned from a different law enforcement agency after a botched investigation, without more, was insufficient to sustain the negligent hiring and supervision claim. (*Id.* at 31-34.) Thus, after the above analysis, the Magistrate Judge

---

[6] Such facts included "1) [Kellen] and Tiffany's account tending to establish Charisse was the aggressor, 2) the availability of [potentially] exculpatory evidence from four (4) other readily available affiants, 3) the inconsistencies contained in Charisse's initial complaint that [Kellen] was the suspect and, 4) the fact that Charisse had attacked [Kellen] once before." (ECF No. 53 at 19 (citation omitted).)

8

recommended granting Defendants' Motion in its entirety. (*Id.* at 34-35.)

B.     Objections

Plaintiff offers extensive Objections to the Report. (*See* ECF No. 56.) To start, Plaintiff reiterates the contention that a genuine dispute exists whether Smith omitted "material facts from his affidavit" or "possessed probable cause to seek a warrant for Tiffany's arrest."[7] (*Id.* at 3.) Plaintiff again points to several "material facts" that were not in the affidavit but Smith knew when he sought the warrant, including

> 1) a previous incident at Frankie's Fun Park, corroborated by Charisse and Minor Child, where Charisse was the initial aggressor attacking both Tiffany and Kellen. 2) several harassing and threatening phone calls and text messages from Charisse to Tiffany, 3) several harassing phone calls from Charisse to Tiffany's work's HR Department, 4) Kellen's assertion that Charisse was the initial aggressor; Tiffany's assertion that Charisse was the initial aggressor, and 5) the availability of numerous witnesses who possessed evidence that Charisse was the initial aggressor and not simply as witnesses. Finally, Kellen further testified that Smith initially felt the Incident was one of mutual combat; a material fact additionally excluded from Smith's affidavit preceding Tiffany's arrest warrant.

(*Id.* at 5 (internal citations omitted).) Plaintiff also highlights that the minor child stated Charisse would sometimes speak negatively about Kellen and Tiffany, thus revealing bias and/or unreliability on the child's statements. (*Id.* at 5, 8-10.) Had these facts been included in the affidavit, Plaintiff posits probable cause would not have been established for Tiffany's arrest. (*Id.* at 6.) Likewise, when examining whether probable cause existed, Plaintiff contends the Magistrate Judge did not analyze all the above relevant facts known to Smith. (*Id.* at 7-10.) And Plaintiff claims Smith acted unreasonably, in that he should have interviewed more witnesses, informed the state judge of differing accounts of events, and better evaluated witness credibility. (*Id.* at 10-11.)

---

[7] Perhaps the most consequential objection Plaintiff raises is that Kellen in fact "witnessed the inception of the fight," despite the Magistrate Judge's finding to the contrary, and asserts the fight began in the residence before moving outside. (ECF No. 56 at 3-4.)

9

Plaintiff then takes aim at the remaining claims. For federal malicious prosecution, Plaintiff essentially argues probable cause did not exist before or after Tiffany was arrested, and particularly after Smith received four affidavits in March 2018 "which corroborated Kellen's and Tiffany's accounts of events[.]"[8] (*Id.* at 13.) From there, Plaintiff turns to the state law claims, insisting Smith was grossly negligent and reckless primarily for the reasons discussed.[9] (*Id.* at 14-17.) Plaintiff relatedly stresses the false imprisonment, assault and battery, and intentional infliction of emotional distress claims should survive because it is disputed whether probable cause existed and Smith in fact acted outrageously. (*Id.* at 17-19, 22.) And Plaintiff maintains the state malicious prosecution and defamation claims should in fact survive Tiffany's death, despite a dearth of supporting case law and the Magistrate Judge's recommendation to the contrary. (*Id.* at 19-21.) Lastly, Plaintiff again alleges the Sheriff's Department "was on notice . . . of Smith's propensity to conduct deficient investigations" based upon a single news article from 2012, thus requiring the negligent hiring and supervision claim to survive. (*Id.* at 22-25.)

Defendants entered a short Reply opposing Plaintiff's Objections. (ECF No. 61.) In it, Defendants reemphasize that Kellen "confirmed" he never saw "the actual physical assault taking place between Tiffany and Charisse." (*Id.* at 2.) Defendants characterize Plaintiff's objection as "a distinction without a difference" based upon the phrasing of this finding within the Report. (*Id.*) Moreover, Defendants distinguish case law cited by Plaintiff, and further state nearly all of

---

[8] Plaintiff asserts Smith continued to maliciously prosecute Tiffany after receiving these materials until the evidentiary hearing in June 2018, "after which [the state court] found that Tiffany was entitled to immunity." (ECF No. 56 at 13-14.) Plaintiff also notes Defendants did not brief issues surrounding federal malicious prosecution in its Motion for Summary Judgment. (*Id.*) Yet even if true, the court observes Plaintiff has had the opportunity to be heard on this matter and thoroughly briefed these issues in both her original twenty-eight page Response opposing summary judgment (*see* ECF No. 45) and her twenty-six page Objections to the Report (*see* ECF No. 56).

[9] Plaintiff again contends Defendants did not raise this issue in its Motion. (ECF No. 56 at 15.) But as discussed, the court notes Plaintiff has made herself thoroughly heard on this issue.

Plaintiff's objections are merely rehashed arguments that the Magistrate Judge properly considered and addressed. (*Id.* at 2-4.)

C.   The Court's Review

   *(1) Federal Unlawful Seizure*

Plaintiff objects to the findings that probable cause existed and the affidavit supporting the arrest warrant was proper. The court overrules these objections and finds Tiffany was not unlawfully seized. First, probable cause existed to arrest Tiffany. Smith, a law enforcement officer with twenty-nine years of experience at the time, had the following information available to him: Purportedly within the hour of the incident, Charisse filed a police report with the Sheriff's Office. Charisse later provided a written statement to Smith, who had been assigned to the case. Charisse said Tiffany assaulted her and Kellen threatened her. Shortly thereafter, a forensic interview of the minor child was conducted, with his version of events supporting Charisse's story. Charisse also provided photos of her injuries she claimed occurred after Tiffany pushed her from behind, causing her to fall onto concrete. By contrast, Kellen and Tiffany claimed Charisse was the aggressor. Kellen admitted to threatening bodily harm to Charisse if she hit him. Smith also purportedly knew of a rancorous history among the parties, including allegedly threatening or harassing communications from Charisse to Tiffany, and the presence of other witnesses at the scene.

Taken together, the court finds probable cause existed to arrest Tiffany. Smith interviewed four witnesses, included the purported victim. Based on the record at the time the arrest warrant was sought, it appears reasonable for Smith to have believed Charisse's and the minor's version of events. As the Magistrate Judge correctly pointed out, "a finding of probable cause may be based on information provided by a victim or eyewitness to a crime, as it is well-established that when an officer has received . . . information from some person—normally the putative victim

or an eyewitness—who it seems reasonable to believe is telling the truth, he has probable cause." (ECF No. 53 at 15-16 (first citing *Battle v. Jones*, C/A No. 6:15-4960-BHH-KDW, 2016 WL 7800306, at *4 (D.S.C. Dec. 20, 2016), and then citing *Williams v. Wright*, C/A No. 6:10-2844-TMC-JDA, 2011 WL 6700373, at *19 (D.S.C. Nov. 2, 2011) ("[U]nless there is an apparent reason for the officer to believe the victim is lying. . . a victim's statement will constitute sufficient probable cause.").).) The United States Court of Appeals for the Fourth Circuit has similarly observed "[i]t is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker. Indeed, it is difficult to imagine how a police officer could obtain better evidence of probable cause than an identification by name of assailants provided by a victim, unless, perchance, the officer were to witness the crime himself." *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991) (citation omitted).

Further, there was no duty to investigate each and every witness. Again quoting *Torchinsky*, the Magistrate Judge emphasized "[i]t will, of course, always be possible to contend in court that an arresting officer might have gathered more evidence, but judges cannot pursue all the steps a police officer might have taken that might have shaken his belief in the existence of probable cause." (ECF No. 53 at 16-17 (quoting *Torchinsky*, 942 F.2d at 264).) Smith interviewed four individuals—the apparent victim and aggressor, and two eyewitnesses—for what may be described as a relatively straightforward domestic disturbance incident. While Smith certainly *could* have completed additional investigation, and the altercation was a serious and disturbing incident, the court cannot say the level of investigation in this case was unreasonable.

Nor is there any indication in the record that Smith's failure to interview additional witnesses amounted to him ignoring exculpatory evidence. (*See* ECF No. 53 at 17 (citing *McKinney v. Richland Cty. Sheriff's Dep't*, 431 F.3d 415, 418-19 (4th Cir. 2005) ("The district

court erred in concluding that Livingston ignored exculpatory evidence when he failed to conduct more interviews or discuss the incident with the school's representatives. At most, these omissions amounted to a failure to pursue potentially exculpatory leads, and such does not negate probable cause.").).)

Additionally, the court examines Plaintiff's claim that Kellen in fact "witnessed the inception of the fight." (ECF No. 56 at 3.) This finding is important because the Magistrate Judge essentially found it was reasonable to discredit Kellen's version of events as to who began the physical altercation. As noted above, Plaintiff alleges the fight began inside, with the women continuing to struggle as they moved outdoors. However, the investigative report reflects in August 2016 Kellen told Smith

> that the victim came in the house to pick up their child and when she did this they were taking photos together . . . . [Kellen] stated that when Tiffany came over to take a photo with him and his son, Charisse spoke to Tiffany and said "[b]itch this will be the last one." Tiffany then told Charisse "[d]on't disrespect her like that." Charisse then told Tiffany to come on and let's go outside.

(ECF No. 42-7 at 4-5.) Immediately thereafter, the same report reflects Kellen said "Charisse was the aggress[or] . . . in this matter," yet Kellen conceded that "by the time that he got outside, the two of them w[ere] already fighting. He and some others pulled the[m] apart from each other." (*Id.* at 5.) The report then notes Kellen "admitted . . . that he went to the victim's vehicle and told her that if she was to hit him he would beat her ass." (*Id.*) Based on the information known when the warrant was sought, it was reasonable that Smith discounted Kellen's version of events in part because Kellen's own account at the time suggested he did not witness the initiation of the *physical* altercation, or, crucially, whether Tiffany in fact pushed Charisse from behind, causing her to fall

to the ground on concrete and sustain injuries.[10]

Second, the omission of certain facts from the affidavit did not amount to an unlawful seizure. For one, there is no indication Smith intentionally omitted facts to mislead the state magistrate judge. Further, the facts before the court do not show that Smith recklessly omitted certain facts because, when the warrant was sought, a reasonable officer likely would not "have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported" for the reasons discussed.[11] *Everette-Oates v. N. Carolina Dep't of State Treasurer*, No. 5:16-CV-623-FL, 2016 WL 10805746, at *9 (E.D.N.C. Sept. 28, 2016).

Even if the affidavit included the facts Plaintiff highlights, probable cause still would have

---

[10] Kellen's version of the incident was more detailed, if not somewhat different, in subsequent testimony. Plaintiff asserts Kellen testified at the state evidentiary hearing that Charisse essentially initiated the physical altercation in the residence by grabbing Tiffany, and the two women "were locked together as they went out the door of the home." (ECF No. 45 at 6.) Later, when asked at his deposition for the instant case whether he could see "Tiffany push Charisse, you weren't in a position – you didn't see one way or the other?", he replied that "[b]ecause when they got to the door, they was locked in together. So my dad, got him up because they was around each other. And then when we got up, they was already fighting. They was already – it was only two steps. So they was already at the bottom of the steps. And once we got to them, we was pulling them apart." (*Id.*) Notwithstanding any potential differences, these statements obviously occurred after Tiffany was arrested and thus do not impact whether probable cause existed at the time the warrant was sought.

[11] The court also observes that

> an officer's mere "failure to disclose exculpatory evidence" does not state a claim for a constitutional violation. *Washington v. Wilmore*, 407 F.3d 274, 282 (4th Cir. 2005). "Affiants are not required to include every piece of exculpatory information in affidavits," and an "omission of facts inconsistent with a suspect's guilt from an affidavit" may not constitute "an attempt to mislead the magistrate." *Evans*, 703 F.3d at 651.

*Everette-Oates*, 2016 WL 10805746, at *10.

supported the arrest. For instance, a prior incident at Frankie's Fun Park involving the parties,[12] as well as other potentially threatening or harassing communications, demonstrates a discordant history rather than a fact to alter the existence of probable cause when the warrant was sought for the instant offense. Other facts simply rely on Tiffany's and Kellen's version of events which, as discussed, would not have negated probable cause. (*See* ECF No. 53 at 18 (quoting *Battle*, 2016 WL 7800306, at *6 ("Were the court to find otherwise and place a duty on an officer to investigate further despite having sufficient probable cause for a warrant, any suspect could defeat probable cause and delay an arrest simply by saying, 'I didn't do it.'").).) Nor has sufficient evidence been offered to impugn the credibility of the minor child, beyond mere speculation and the fact Charisse was his custodial parent. Plaintiff likewise cites to no precedent to support her contentions that "[t]he custodial parent has control and influence over the child" to discredit a minor's testimony, and that a child "always favors the parent they are with." (ECF No. 56 at 9.) And as explained, Smith was under no obligation to interview additional witnesses before seeking the warrant in this particular case. Such facts, even if included in the affidavit, did not negate probable cause or sufficiently give rise to an apparent reason to doubt Charisse or the minor child. Thus, at bottom, the court overrules Plaintiff's objections and dismisses Plaintiff's claims that she was unlawfully seized.

   *(2) Federal Malicious Prosecution Claim*

   Plaintiff primarily objects to the federal malicious prosecution claim's dismissal because, three months before the state court ruled Tiffany had acted in self-defense, "Smith obtained

---

[12] During the forensic interview, the minor child reported that, on some previous date while staying with Kellen, he called Charisse and stated that "Tiffany was giving him 'wedgies,'" and that they were all heading to Frankie's Fun Park. (ECF No. 42-5 at 3.) Charisse later arrived at Frankie's Fun Park "and told Tiffany not to touch her baby," "jumped" onto Tiffany after she told Charisse "yes mam" but then mumbled something, and slapped Kellen "in the face." (*Id.*)

15

evidence which indisputably destroyed any credible argument for the existence of probable cause[,]" yet he continued "to maliciously prosecute Tiffany until" the hearing. (ECF No. 56 at 13.) Plaintiff points to four witness affidavits and an email wherein Charisse admitted to slapping Kellen at Frankie's Fun Park, as well as one of the dissenting opinions in *Jean v. Collins*, 221 F.3d 656, 676 (4th Cir. 2000), for support. (*Id.*)

Plaintiff appears to agree with the Magistrate Judge's recitation of the law, explaining that

> "[a] 'malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort.'" *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012) (quoting *Lambert v. Williams*, 223 F.3d 257, 261 (4th Cir. 2000)). To state a claim for malicious prosecution, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans*, 703 F.3d at 647.

(ECF No. 53 at 30 n.10.) The Fourth Circuit in *Evans* went on to observe "a police officer is not liable for a plaintiff's unlawful seizure following indictment in the absence of evidence that [the officer] misled or pressured the prosecution." *Evans*, 703 F.3d at 648 (citations and internal marks omitted).

Here, the federal malicious prosecution claim shall be dismissed. For one, as discussed, probable cause existed to arrest Tiffany at the time the warrant was sought in mid-2016. Further, once Smith received the affidavits and email in March 2018, Plaintiff has put forth no evidence that he withheld this material from the prosecutor, or otherwise lied, misled, or offered undue pressure to ensure Tiffany's prosecution continued.[13] Additionally, the court notes the affiants

---

[13] Plaintiff does not appear to contend Smith withheld the four affidavits and email from the prosecution. Instead, Plaintiff alleges "Smith continued, unsupported by probable cause, to maliciously prosecute Tiffany until an evidentiary hearing was held on June 20, 2018 after which Magistrate Judge Streater found that Tiffany was entitled to immunity." (ECF No. 56 at 13-14.)

themselves testified three months later at the June 2018 state evidentiary hearing, where Tiffany was found to have acted in self-defense. Thus, for these reasons, as well as the reasons outlined within the Report, the court dismisses the federal malicious prosecution claim.

*(3) Remaining State Law Claims*

It appears virtually all of Plaintiff's objections related to the state law claims are rehashed contentions that the Magistrate Judge properly considered and addressed. Rather than specifically objecting to portions of the Report, Plaintiff looks to reassert her previously denied arguments. However, the court declines to hear Plaintiff's reused arguments. The court otherwise observes no clear error on the face of the record. Accordingly, the court finds the state law claims for gross negligence and recklessness; false imprisonment; intentional infliction of emotional distress; defamation and malicious prosecution; assault and battery; and negligent hiring, training, retention, and supervision shall be dismissed for the reasons thoroughly discussed within the Report.

## V.     CONCLUSION

For the reasons set forth above, the court **GRANTS** Defendants' Motion for Summary Judgment on all claims. (ECF No. 42.) The court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 53) and incorporates it herein by reference as set forth above.

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

May 24, 2021
Columbia, South Carolina